UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| LERON PORTER,<br>    Petitioner,<br><br>v.<br><br>PATRICIA COYNE-FAGUE,<br>    Respondent. | )<br>)<br>)<br>)<br>)   C.A. No. 19-516-JJM-PAS<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

I. OVERVIEW

Petitioner Leron Porter requests habeas relief from this Court based on the State's use of peremptory challenges during his 2013 criminal trial. ECF No. 1. He brings this petition under 28 U.S.C. § 2254, alleging that the Rhode Island Supreme Court misapplied or misconstrued *Batson v. Kentucky*, 476 U.S. 79 (1986) when it concluded that the prosecutor's reason for striking Juror 103 was neither race based nor pretextual. Arguing that his petition fails to meet the high standards necessary for habeas relief, the State urges this Court to dismiss Mr. Porter's claim. ECF No. 4. For the reasons below, the State's argument prevails, and Mr. Porter's petition is DENIED.

II. BACKGROUND

Mr. Porter's case begins in 2011, when a "feud between two women over one man and an ensuing brawl led to the senseless murder of Tiphany Tallo . . ., a teenage

girl." *State v. Porter*, 179 A.3d 1218, 1222 (R.I. 2018). Mr. Porter – a Black man – was charged with Ms. Tallo's murder and eight other felonies. *Id.* at 1223 & n.6. In November 2013, the R.I. Superior Court seated a 14-person jury in Providence County over the course of three days. During empanelment, the defense made *Batson* objections challenging the prosecution's use of peremptory strikes on two jurors. Both strikes were successful, and the final jury contained no people of color.[1] Mr. Porter was convicted on multiple counts and sentenced to several overlapping prison terms by the trial justice.[2] ECF No. 15 at 1-2.

Following his conviction, Mr. Porter petitioned the R.I. Supreme Court – arguing, among other things, that the trial justice violated his rights under *Batson* by denying his attorney's challenges to the prosecutor's peremptory strikes. *Porter*, 179 A.3d at 1224-27. After the court upheld both strikes, he appealed to the United States Supreme Court, which denied his petition for a writ of certiorari on October 15, 2018. *Id., cert. denied*, 139 S.Ct. 376 (2018). He now petitions this Court for habeas relief, arguing that the trial justice, and state appellate court, misapplied or

---

[1] The ethnicity of one almost-juror, who was excused shortly after voir dire, was never defined. Otherwise, there were no individuals of color on the jury.

[2] The jury found Mr. Porter guilty of second-degree murder, discharging a weapon while committing a crime of violence, and possessing a firearm having previously been convicted of a felony, and acquitted him of one count of assault with a dangerous weapon. *Porter*, 179 A.3d at 1223. The State dismissed the remaining counts in the indictment. The Superior Court trial justice sentenced Mr. Porter to a life sentence with twenty-five years to serve before becoming eligible for parole, a life sentence for discharging a weapon while committing a crime of violence, ten years for the weapon possession conviction, and an additional twenty-five years consecutive to the sentences imposed on the other counts. *Id.* at 1221.

misconstrued *Batson* when they found the prosecutor's reasons for striking Juror 103 permissible.[3]

*Trial Court Proceedings*

The relevant trial court proceedings began on November 6, 2013, when Juror 103 was preliminarily selected to serve on Mr. Porter's jury. Before being seated for voir dire, the juror immediately asked to speak with the trial justice. There, he expressed concerns about serving as a juror because of his work as an institutional attendant at the Eleanor Slater Hospital, where inmates and forensic patients are treated. He noted that Mr. Porter's case had generated "considerable chatter" at his workplace, and an individual's jury service is "pretty much public information." ECF No. 4-2 at 190, 193. Altogether, he worried about potential repercussions at work following a verdict – telling the court "chances are, regardless of which way it goes, I can find myself subject of either allegations or hostile treatment either from the staff or from patients." *Id.* at 191.

Throughout the colloquy, Juror 103 maintained that he would be able to serve as a fair and impartial juror. When asked by the trial justice if he was "in any way biased or prejudiced in connection with how [he] might resolve this case," he replied "[n]o, not at all." *Id.* at 191-92. Addressing his fear of retaliation at work, he noted:

---

[3] In his appeal to the R.I. Supreme Court, Mr. Porter challenged two peremptory strikes successfully deployed by the prosecution during his trial. In his habeas petition to this Court, however, he only challenges the striking of Juror 103. Accordingly, the following sections will focus on the facts surrounding this second strike. They are drawn primarily from excerpts of the trial transcript (ECF No. 4-2) and the state appellate court's decision in Mr. Porter's case.

"I don't think it would affect me being fair, but it possibly could affect my life thereafter." *Id.* at 196. After more back-and-forth, the trial justice followed up with a final question: "are you assuring me, as you stand here right now, you are a fair and impartial juror?" *Id.* at 197. Juror 103 answered affirmatively. Following the sidebar, subsequent questioning in front of the venire established that Juror 103 had friendships with police and correctional officers, but would be able to sit fairly and impartially, listening to and applying the court's instructions. *Id.* at 198-200. The court had Juror 103 join the panel.

At the end of voir dire, following a brief recess, the prosecution sought to exercise a peremptory strike on Juror 103, explaining to the trial justice:

> . . . [T]he State bases its challenge on the following. The juror ultimately indicated that he has a feeling and is under the belief that as a consequence of his verdict, he may face repercussions, or he would face – and I think the words he used, Your Honor, was he would get blow-back, quote-unquote. Blow-back and concern, based on his verdict.
> *Essentially, what he was saying is that – and, again, this is the State's take – he's a member of the African-American community, the defendant at the bar is a member of the African-American community, he's the only one on the panel who is, and if he were to vote guilty there could be consequences to it.* And I would submit, respectfully, I may be wrong, but if he were to vote not guilty, I don't think he would have any consequence. I don't think he indicated – and I think, I would infer from the record that all of his concern is, quote, towards a guilty verdict. He never was asked that, but I would – as common sense indicates, how could it not be for a not guilty verdict?
> Essentially, although he may have said he could deliver a verdict in this case, he expressed, as stated on the record, if the defendant was found guilty, the – a person at the ACI that got word of that could cause him concern, and I think he actually used the words: They would find out, and it could affect me.
> I think, based on that, the State submits that we have a reason that although he said he could deliver a verdict, quite frankly, I still think it's a concern for him, and based on that, we would ask to excuse the juror.

4

*Id.* at 202-03 (emphasis added).

Defense counsel responded with a *Batson* objection, describing Juror 103 as an "articulate, well-defined, apparently, African male, who has indicated, without question, that he could be fair and impartial to both the State and to the defendant." *Id.* at 204. Counsel also pointed out that Juror 103 was the sole remaining person of color in the pool, as the prosecution had previously exercised a peremptory strike against the only other one. Without Juror 103, counsel argued, Mr. Porter would be deprived "of his right to have a representative body determine his innocence or guilt." *Id.*

The trial justice rejected defense's *Batson* challenge. He began by observing that his role was "to determine whether or not the State's explanation is a race-neutral explanation for the exercise of a peremptory challenge" and "not pretextual." *Id.* at 205. Emphasizing the earlier colloquy, the justice noted:

> [Juror 103], at the very outset when his name was called, declined to take his seat in the jury box and immediately asked to come to the bench, and his first comments to us clearly indicated that he wanted to be excused. He did not want to be here. Does not want to be here. He explained to us the concerns he has that there will be some kind of repercussion at the workplace, regardless of what the verdict is, the result of the deliberations.

*Id.* He found that, irrespective of Juror 103's efforts to be fair in deliberations, concerns surrounding his employment were sufficient race-neutral reasons to excuse the juror. In this vein, the justice also expressed a concern – not mentioned by any other individuals – that Juror 103 might inject "explanations about his workplace

5

situation" into the jury's deliberations. *Id.* at 205-06. Accordingly, the prosecution was successful in striking Juror 103.

*Rhode Island Supreme Court Findings*

Following his conviction, Mr. Porter appealed his *Batson* challenges to the R.I. Supreme Court, which analyzed the trial court proceedings under the required three-part test. The court held that the first step – which requires the defendant to "establish a *prima facie* case of purposeful discrimination" – was moot, "because the trial justice acknowledged that [Juror 103 is] of minority descent, considered the prosecution's race-neutral reasons for [the] strike, and entertained defendant's objections." *Porter*, 179 A.2d at 1224, 1226 (citations omitted). The court then proceeded to the next step, for which "the burden shifts to the prosecution to articulate its race-neutral reason(s) for challenging that particular juror." *Id.* at 1224 (citations and quotations omitted). Identifying the prosecutor's reason for striking Juror 103 as "based on [his] concerns—raised at the outset—about potential retaliation he could face as a juror in this case," the court found "no error in the trial justice's conclusion that the state's explanation for [the] challenge could qualify as a race-neutral reason for excusing the juror." *Id.* at 1226.

Finally, the state supreme court undertook the third step – "determining whether the trial justice properly concluded that the race-neutral reasons for the strike did not amount to purposeful discrimination." *Id.* There, the state court highlighted the fact that Juror 103 "*sua sponte* requested a sidebar in order to discuss his concerns about potential retaliation at work regardless of the outcome of the

6

trial," and emphasized the deference afforded to trial justices "when evaluating the prosecution's state of mind." *Id.* at 1227. Ultimately, the court held that the prosecutor's stated concerns qualify as a race-neutral reason for a peremptory challenge. *Id.* Although the court noted in a footnote that 'it would have been more appropriate for the trial justice, at this juncture, to have excused Juror 103 for cause," the trial justice's denial of Mr. Porter's *Batson* claim was affirmed. *Id.* at 1227 n.7.

## III.  STANDARD OF REVIEW

This Court's review of Mr. Porter's habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. "AEDPA sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was adjudicated on the merits in State court proceedings." *Johnson v. Williams*, 568 U.S. 289, 298 (2013). AEDPA outlines two circumstances in which a federal court may issue such a writ – specifically stating:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

7

## IV. DISCUSSION

### A. Contrary to, or . . . an Unreasonable Application

Under 28 U.S.C. § 2254(d)(1), this Court reviews habeas petitions from state court proceedings to determine if the court's decision was "contrary to or involved an unreasonable application of" federal law. In the instant case, Mr. Porter argues that the R.I. Supreme Court's rejection of his *Batson* challenges was both contrary to and involved an unreasonable application of *Batson* and its progeny. ECF No. 15 at 11. The State counters that Mr. Porter's claims lack merit, and the state appellate court's decision conformed to and reasonably applied *Batson*. ECF No. 4-1 at 12. Because "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning," *Bell v. Cone*, 535 U.S. 685, 694 (2002), this Court will consider Mr. Porter's claim against each standard.

#### 1. Contrary to *Batson*

Mr. Porter argues that the R.I. Supreme Court decision dismissing his claim was contrary to *Batson* and its progeny, which hold that race may not be the basis for a peremptory challenge to a juror. ECF No. 15 at 11. The State counters that the court explicitly applied the correct three-part test prescribed by *Batson* – all that is required under the deferential standard established by AEDPA and subsequent habeas jurisprudence.

Here, the State is correct. Under § 2254(d)(1), "a decision is contrary to clearly established federal law either if it announces a rule of law that directly contradicts existing Supreme Court precedent or if the state court has reached a different result

8

than the Supreme Court on materially indistinguishable facts." *Cronin v. Comm'r of Prob.*, 783 F.3d 47, 50 (1st Cir. 2015) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). When reviewing Mr. Porter's claims, the state appellate court clearly applied the test articulated in *Batson* – comprehensively outlining the three parts of the test and reviewing the trial court proceedings in light of them. *See Porter*, 179 A.3d at 1224-27.

With legal analysis conducting *Batson*'s test, the R.I. Supreme Court's holding on Mr. Porter's claim was not contrary to established federal law. The court applied the rule of law directly established by the U.S. Supreme Court in *Batson* and defied no holding by the high court on similar facts.

### 2. An Unreasonable Application of *Batson*

Mr. Porter and the State also disagree on whether the state court's decision involved an unreasonable application of *Batson*. Mr. Porter presents a compelling case that the R.I. Supreme Court's application of *Batson* was incorrect, given the explicit role race played in the State's decision to strike Juror 103. ECF No. 15 at 11-12. However, the State's argument – that, regardless of this Court's take on the proceedings, the state court's application was not *unreasonable* – ultimately prevails.

This success underscores the severe limitations placed on federal district courts in habeas review of state court decisions. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphases in original) (citing *Williams*, 529 U.S. at 410). A state court decision constitutes an unreasonable

9

application of federal law "if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). This is a standard of immense "deference and latitude" to state court decisions – to the point where habeas review is precluded for claims over which "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, in instances where "there are reasonable arguments on both sides," habeas relief is unavailable. *See White*, 572 U.S. at 427.

Mr. Porter's claim cannot survive this demanding standard established by AEDPA. Reviewing the R.I. Supreme Court's analysis regarding Juror 103 *in toto*, this Court cannot consider the decision beyond the realm of fair-minded judicial reasoning. Ultimately, the state appellate court's "inquiry [was] whether the State was motivated in substantial part by discriminatory intent" when using a peremptory strike on Juror 103. *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019) (citation omitted). It is not inconceivable for a court, in light of the total circumstances surrounding Juror 103's empanelment, to believe that the State was motivated by factors other than race in its decision to strike. Meeting this low threshold for what constitutes a reasonable application of *Batson*, this Court must show the state appellate court appropriate deference and deny Mr. Porter habeas relief under § 2254(d)(1).

*An Incorrect Application of Batson*

While this Court must deny Mr. Porter relief, it takes seriously the notion "that federal courts, even on habeas, have an independent obligation to say what the law

is." *Williams*, 529 U.S. at 384 (citation omitted). The importance of *Batson* cannot be overstated – as the U.S. Supreme Court stated in 2019:

> Equal justice under law requires a criminal trial free of racial discrimination in the jury selection process. Enforcing that constitutional principle, *Batson* ended the widespread practice in which prosecutors could (and often would) routinely strike all black prospective jurors in cases involving black defendants. By taking steps to eradicate racial discrimination from the jury selection process, *Batson* sought to protect the rights of defendants and jurors, and to enhance public confidence in the fairness of the criminal justice system. *Batson* immediately revolutionized the jury selection process that takes place every day in federal and state criminal courtrooms throughout the United States.

*Flowers*, 139 S. Ct. at 2242–43. Of course, there is no doubt that the State's prosecutors and judges have the highest respect for *Batson*, the principles it espouses, and the tremendous impact it has had on our legal system. Still, were it up to this Court to determine the veracity of Mr. Porter's *Batson* claim as a matter of first impression, he would have faced greater success.[4]

Based on the record before the R.I. Supreme Court, Mr. Porter's rights under *Batson* appear to have been violated during jury selection. Simply, *Batson* requires the State to offer a race-neutral reason for its exercise of a peremptory strike. Responding to defense counsel's *Batson* objection to its challenge of Juror 103, the State responded with a strikingly race based reason. Almost immediately, the prosecution linked concerns about Juror 103's performance as a juror to his race,

---

[4] It is not. *See, e.g., White*, 572 U.S. at 427 (noting that "[t]he appropriate time to consider the question" – in *White*, whether a prisoner's Fifth Amendment privilege against self-incrimination was violated during his state trial – "as a matter of first impression would be on direct review, not in a habeas case governed by § 2254(d)(1).").

11

noting that "he's a member of the African-American community, the defendant at the bar is a member of the African-American community, he's the only one on the panel who is, and if he were to vote guilty there could be consequences to it." ECF No. 4-2 at 202-203. Despite Juror 103's earlier claim that he was concerned "[e]ither way the case is resolved," *id.* at 190, the prosecution went on to note that "I would infer from the record that all of his concern is, quote, towards a guilty verdict." *Id.* at 203. This inference was also made despite an earlier acknowledgment by Juror 103 of the possibility that he "would be subject to some pointed discussion when [he] returned either way, whatever happened, guilty or not guilty[.]" *Id.* at 191. Given this, it strains credulity to believe that the prosecution was not linking Juror 103's race to his likelihood of returning a guilty verdict – perhaps presuming that the Black community, or those within it, favor not guilty verdicts.

This Court reads the State's proffered reason for striking Juror 103 as race based. Mr. Porter's counsel said it well in his brief before the state appellate court: "The prosecutor was saying that juror 103 is African-American, he is the only African-American on the panel, and if he were to vote guilty there could be consequences. This is explicitly a challenge based on race according to the prosecutor's own words." ECF No. 5 at 34 (Attachment 2).

Ultimately, the trial justice did not consider the State's actual proffered reason in his determination that the strike was not racially motivated. Instead, he highlighted Juror 103's reticence and fear of facing workplace repercussions and pointed out his own concern that Juror 103's work might affect the jury deliberations.

These were not the reasons stated by the prosecution for exercising the strike, which resulted in Mr. Porter being tried before an all-white jury. While the trial justice correctly noted that Mr. Porter did not have a cognizable right to have people of color on his jury, ECF No. 4-2 at 206, his is an outcome that our courts have "vigorously enforced and reinforced" *Batson* in the hopes of preventing. *Flowers*, 139 S.Ct. at 2243.

Unfortunately for Mr. Porter, the R.I. Supreme Court assessed the proceedings differently, and found sufficient race-neutral reasons for a peremptory challenge against Juror 103. Again, as a conclusion within the realm of fair-minded agreement, this Court must defer to it and deny habeas relief under § 2254(d)(1).

### B. Unreasonable Determination of Facts

Finally, Mr. Porter argues for habeas relief under § 2254(d)(2), which allows for the writ if the challenged state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." When making this determination, federal courts "must accept the state court findings of fact unless . . . convince[d] . . . by clear and convincing evidence, that they are in error." *Linton v. Saba*, 812 F.3d 112, 116 (1st Cir. 2016) (citations and quotation omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006). Mr. Porter presents no such evidence and does not clearly challenge any determination of facts made by the state courts. Rather, he critiques the courts' *Batson* analyses – an argument not appropriate for § 2254(d)(2). In the absence of

13

any viable claim here, this Court must deny Mr. Porter habeas relief under this subsection as well.

## V. CONCLUSION

Because of the limited authority federal district courts have to grant habeas petitions from state court convictions, this Court DENIES Mr. Porter's petition for habeas relief. ECF No. 1.[5]

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

March 24, 2021

---

[5] Because the Court has denied the Petition, it DENIES AS MOOT the Defendant's Motion to Dismiss. ECF No. 4.